Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*

United States District Court
Eastern District of New York                                1:20-cv-00712

| | |
|---|---|
| Tiffany Taylor, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Complaint |
| Tipp Distributors, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Tipp Distributors, Inc. ("defendant") manufactures, distributes, markets, labels and sells iced tea beverages purporting to be low in sugar under the Steaz brand ("Products").

2.    The Products are available to consumers from retail and online stores of third-parties and are sold in in sizes including 16 OZ.

3.    The relevant front label statements include "Lightly Sweetened," "Steaz," statement of identity, Iced Green Tea – Peach, "flavored with other natural flavors" and a vignette of peaches.




4.      The representations are misleading because though being represented as low in sugar, they actually contain objectively high amounts of sugar, as added sugar.

I.      Increasing Consumer Avoidance of Sugar and Sweetened Food and Beverages

5.      In 2014, the National Institutes of Health cautioned: "experts agree that Americans eat and drink way too much sugar, and it's contributing to the obesity epidemic. Much of the sugar we eat isn't found naturally in food but is added during processing or preparation."[1]

6.      The NIH noted further: "[s]everal studies have found a direct link between excess sugar consumption and obesity and cardiovascular problems worldwide."[2]

7.      There has long been a consensus among doctors and nutritionists that "[e]ating too much sugar contributes to numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even indirectly to cancer because of

---

[1] NIH, Sweet Stuff: How Sugars and Sweeteners Affect Your Health, October 2014.
[2] Id.

2

certain cancers' relationship to obesity."[3]

8.    In addition, "there is emerging research that suggests high-sugar diets may increase the risk of developing [dementia]."[4]

9.    At least in part due to growing consumer awareness of health problems caused by excessive sugar consumption, in recent years consumers have shown a distinct preference for products with little or no added sugar.

10.   In August 2016, a trade journal reported that "[o]ngoing concerns about obesity and sugar intake have driven interest in reduced sugar and diet drinks in recent years."[5]

11.   A May 2017 essay observed that "[h]ealth concerns and better educated consumers are propelling the demand for sugar reduction across food and beverage categories."[6]

12.   According to lecturers at the International Sweetener Colloquium in Orlando, Florida in February, 2018, " on February 13, "sugar avoidance was a macro trend 'that is here to stay and will only increase.'"[7]

13.    This conclusion was supported by survey data showing that "58% of consumers across generations are avoiding sugar. . . [and of] those avoiding sugar, 85% are doing so for health reasons and 58% for weight concerns."[8]

II.    Nutrition Authorities Promote Limited Consumption of Added Sugars

14.   The 2015-2020 Dietary Guidelines for Americans ("DGA") recommended that

---

[3] Marlene Cimons, Eating too much sugar can hurt your health, and for some it's actually addictive, Washington Post December 16, 2017.
[4] Kieron Rooney, Yes, too much sugar is bad for our health – here's what the science says, The Conversation, March 8, 2018.
[5] PreparedFoods.com, Trends in Sugar Reduction and Natural Sweeteners, August 24, 2016.
[6] Laura Dembitzer, Less is More: Sugar Reduction, Less Sodium & Low-FODMAPS in Food, Beverage, Food Insider Journal, May 09, 2017.
[7] Ron Sterk, Avoidance of sugar remains macro trend, Food Business News, February 28, 2018
[8] Id., citing survey conducted by Information Resources, Inc. ("IRI").

added sugar make up no more than 10 percent of all calories consumed per day.[9]

15.     Based on an average of 2,000 calories per day, this means the maximum daily amount of added sugars should not exceed 200 calories or 50 grams of sugar.

16.     The FDA adopted the DGA limits on added sugars and "concluded that there is strong and consistent evidence that healthy dietary patterns characterized, in part, by lower intakes of sugar sweetened foods and beverages relative to less healthy patterns, are associated with a reduced risk of CVD (Cardiovascular disease)."[10]

17.     To promote the consumption of less sugar – through less added sugar – the FDA required that a product's added sugars be displayed with a percent daily value (DV) in a food.

18.     For example, if a product contained 10 grams of added sugar, it would provide 20% of the DV.

19.     By providing more and clearer information, consumers would have the tools to be more aware of and limit their added sugar consumption.

III.    Implied Nutrient Content Claims of "Low Sugar" are Prohibited and Can Be Misleading

20.     Low sugar products are generally marketed towards consumers seeking products that are useful in "weight control," through consumption of fewer calories. *See* N. J. Patterson et al., "*Consumer understanding of sugar claims on food and drink products*," Nutrition bulletin, 37.2 (2012): 121-130 ("In focus groups, participants felt deceived if sugar reduction claims were being made without a significant reduction in calories.").

21.     Representations that characterize the level of a nutrient are specifically limited and

---

[9] 2 U.S. Health & Human Servs., U.S. Dept. of Agriculture, *Dietary Guidelines for Americans 2015-2020*, 8th Ed. (Dec. 2015).
[10] Center for Science in Public Interest, Letter to FDA Requesting Enforcement Action on Unauthorized Low Sugar Claims, January 9, 2020.

can only be made in accordance with an authorizing regulation.  21 U.S.C. § 343(r)(2)(A); *see* 21 C.F.R. § 101.13 ("general principles"); *see also* 21 C.F.R. §§ 101.54-101.69 ("Subpart D—Specific Requirements for Nutrient Content Claims").

22.    Nutrient content claims for sugar were originally in a section of regulations for "dietary foods" as 21 C.F.R. § 105.66 originally included "terms such as low calorie, 'reduced calorie,' and 'sugar free,' which were thought to be useful attributes of a food in the maintenance or reduction of body weight."  56 Fed. Reg. 229, 60421 at 60457, Food Labeling: Nutrient Content Claims, General Principles, Petitions, Definition of Terms (Nov. 7, 1991) (21 CFR Parts 5, 101, and 105); FDA, *Guidance for Industry and FDA: Dear Manufacturer Letter Regarding Sugar Free Claims*, Sept. 2007 ("FDA has historically taken the position that consumers may associate claims regarding the absence of sugar with weight control and with foods that are low calorie or that have been altered to reduce calories significantly.").

23.    As "maintaining a healthy body weight became more scientifically supported and accepted as public health and individual goals, it was no longer accurate that they [lower and reduced sugar foods] be described in connection with "special dietary uses."  56 Fed. Reg. 229, 60421 at 60457 ("Consequently, the agency is proposing to place requirements for terms such as 'low' and 'reduced calorie,' comparative claims, and sugar claims, originally provided for in § 105.66, in § 101.60").

24.    Though the FDA has authorized claims for the absence of sugar and calories ("no sugar," "calorie free") and relative amount of calories and sugar ("fewer calories," "less sugar"), no similar claims are permitted for describing a product as "low sugar." *See* 21 C.F.R. § 101.60(c) ("Sugar content claims").

| | Calorie Claims[11] | Sugar Claims[12] |
|---|---|---|
| Absence | No Calories | No Sugar |
| Relative | Fewer Calories | Less Sugar |
| Low | Low Calories | X |

25.    The FDA regularly prevents companies from making "low sugar" claims because they have the strong tendency to mislead, and do mislead, consumers:

> The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…").

FDA, *Warning Letter to CK Management, Inc.*, May 19, 2015.

26.    Label claims "about the calorie or sugar content of a food may only be made" if such claim "uses one of the terms defined in this section in accordance with the definition for that term." *See* 21 C.F.R. § 101.60(a) and 21 C.F.R. § 101.60(a)(1).

27.    This means that because "low sugar" claims have never been authorized, they are prohibited.  58 Fed. Reg. 2302, 2368 ("The agency stated that under the provisions of the statute, such implied claims are prohibited until they are defined by FDA by regulation.").

28.    The Product's use of "Lightly Sweetened" to describe its sugar content is thus prohibited because this term – and its implication of "low sugar" – are not defined by regulation. *See* 21 C.F.R. § 101.60(c).

IV.    **Products Make Misleading Sugar Claims**

29.    When consumers observe the Products' front-label representation of "Lightly

---

[11] 21 C.F.R. § 101.60(b)
[12] 21 C.F.R. § 101.60(c)

Sweetened" claim, they will be misled to believe the Products are lower in sugar and added sugar than they are.

30.    Far from being "lightly sweetened" and low in sugar or low in added sugar, sugar is the second most predominant ingredient in the Product by weight.

**INGREDIENTS: Filtered Water, Cane Sugar†*, Lemon Juice†, Natural Flavors (Peach & Other), and Green Tea†*.**
**†Organic – *fair trade**

**INGREDIENTS:** FILTERED WATER, CANE SUGAR†*, LEMON JUICE†, NATURAL FLAVORS (PEACH & OTHER), GREEN TEA.

31.    According to CSPI, even though the "FDA has not issued regulations defining 'low sugar' or 'low added sugar,' the "upper thresholds for 'low xxx' claims characterizing levels of fat, saturated fat, cholesterol, and sodium range from 5 to 7 percent of the DV for the relevant nutrient, per RACC."[13]

32.    The Product's Nutrition Facts reveals it contains 20 grams of total sugar and 20 grams of added sugar.

---

[13] Center for Science in Public Interest, Letter to Letter to FDA Requesting Enforcement Action on Unauthorized Low Sugar Claims, January 9, 2020.

**Nutrition Facts**

| | |
|---|---|
| Serving Size | 1 can (473ml) |

**Amount per serving**

**Calories** 80

| | % DV* |
|---|---|
| **Total Fat** 0g | **0%** |
| **Sodium** 20mg | **<1%** |
| **Total Carbohydrate** 20g | **1%** |
| Total Sugars 20g | |
| Includes 20g Added Sugars | **40%** |
| **Protein** 0g | **0%** |

Not a significant source of saturated fat, trans fat, cholesterol, dietary fiber, vitamin D, calcium, iron, and potassium.

**\*** %DV=%Daily Value

33.    The Products are not only "high" in added sugars (40% DV) but can be considered "high" in total sugars.

34.    This is because regulations permitting "'high' claims – nutrient content claims characterizing high levels of a nutrient – to be used, provided that the food contains at least 20 percent of the DV per RACC."[14]

35.    Since the Products contain 15 grams of sugar per RACC of 360 mL, which is thirty percent of the DV for added sugars, "exceed[ing] 20 percent of the DV for added sugars per RACC," they are "not only not 'low' in added sugars, but [is] actually 'high' in added sugars according to FDA's standard definition for 'high in' claims."[15]

36.    The result of the Product's low sugar, "lightly sweetened" claim is the false impression to consumers they are low in sugar including added sugar.

37.    Consumers are "misled to believe they are following the DGA's advice and 'selecting beverages low in added sugars,' even as they consume beverages that are actually high

---

[14] CSPI Letter.
[15] *Id.* at p. 6.

8

in added sugars."

38.    By consuming the Products and the 40% DV of added sugar, the average person who wishes to follow the DGA must consume no more than 30 grams of sugar across 1,920 calories (2,000 calories – 80 calories).

39.    It will be difficult to impossible for the average, reasonable consumer to not consume more than 30 grams of sugar in everything else they eat or drink because many foods and beverages have added sugars, albeit in much smaller amounts than the Products here.

40.    Given that most Americans have limited numeracy skills, it is not feasible to ensure no more than 30 grams of sugar are consumed, because this would entail detailed calculations after each food to see how many calories and added grams of sugar they should take in.

41.    To represent a product as "lightly sweetened" that contains almost half of recommended daily added sugar intake poses "a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes.[16]

42.    No requirement exists to compel the Products to represent or allude to their sugar content through the term "Lightly Sweetened" on the front label, as opposed to the requirement it be present in the Nutrition Facts, so added sugar can be viewed next to the percent DV.

V.    Conclusion

43.    Defendant's branding and packaging of the Products are designed to – and does – deceive, mislead, and defraud consumers.

44.    Defendant has sold more of the Products and at higher prices per unit than it would

---

[16] CSPI Letter, *supra* citing FDA.

have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

45.     The amount of sugar or other caloric sweetening ingredients has a material bearing on price or consumer acceptance of the Products because their absence causes consumers to pay more for such Products.

46.     The value of the Product that plaintiff purchased and consumed was materially less than its value as represented by defendant.

47.     Had plaintiffs and class members known the truth, they would not have bought the Products or would have paid less for it.

48.     The Product contains other representations which are misleading and deceptive.

49.     As a result of the false and misleading labeling, the Product is sold at a premium price, approximately no less than $2.49 per unit, excluding tax, compared to other similar products represented in a non-misleading way.

Jurisdiction and Venue

50.     Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act of 2005 or "CAFA").

51.     Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

52.     Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

53.     Plaintiff is a citizen of New York.

54.     Defendant is a Texas corporation with a principal place of business in El Paso, El Paso County, Texas and is a citizen of Texas.

55.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

56.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

57.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

58.    Plaintiff is a citizen of Flushing, Queens County, New York.

59.    Defendant Tipp Distributors, Inc. is a Texas corporation with a principal place of business in El Paso, Texas, El Paso County.

60.    During the relevant statutes of limitations, plaintiff purchased the Product within this district and/or State for personal consumption in reliance on the representations.

Class Allegations

61.    The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class where applicable, during the applicable statutes of limitations.

62.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

63.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

64.    Plaintiff is an adequate representative because her interests do not conflict with other members.

65.    No individual inquiry is necessary since the focus is only on defendant's practices

11

and the class is definable and ascertainable.

66.   Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

67.   Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

68.   Plaintiff seeks class-wide injunctive relief because the practices continue.

<u>New York GBL §§ 349 & 350</u>
<u>(Consumer Protection from Deceptive Acts)</u>

69.   Plaintiff incorporates by reference all preceding paragraphs.

70.   Plaintiff and class members desired to purchase, consume and use products or services which were as described and marketed by defendant and expected by reasonable consumers, given the product or service type.

71.   Defendant's acts and omissions are not unique to the parties and have a broader impact on the public.

72.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

73.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

74.   Plaintiff incorporates by reference all preceding paragraphs.

75.   Defendant misrepresented the substantive, quality, compositional, organoleptic

12

and/or nutritional attributes of the Products through representing they are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

76.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and knew or should have known same were false or misleading.

77.    This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

78.    The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

79.    Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

80.    Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*</u>

81.    Plaintiff incorporates by reference all preceding paragraphs.

82.    Defendant manufactures and sells Products that give the impression they are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

83.    The Products warranted to plaintiff and class members that they possessed

13

substantive, functional, nutritional, qualitative, compositional, organoleptic, sensory, physical and other attributes which they did not.

84.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

85.   This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

86.   Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

87.   Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers to its main office over the past several years.

88.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

89.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

90.   Plaintiff incorporates by references all preceding paragraphs.

91.   Defendant represented the Products are low in sugar when they have significant amounts of added sugar and make it difficult for consumers to follow the Dietary Guidelines for Americans to restrict calories from added sugars and to consume beverages that are actually low in sugar.

92.   Defendant's fraudulent intent is evinced by its failure to accurately identify the Products on the front label.

93.   Plaintiff and class members would not have purchased the Products or paid as much

14

if the true facts had been known, suffering damages.

Unjust Enrichment

94.    Plaintiff incorporates by reference all preceding paragraphs.

95.    Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

Jury Demand and Prayer for Relief

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4.  Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5.  Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6.  Other and further relief as the Court deems just and proper.

Dated:   February 9, 2020

Respectfully submitted,

Sheehan & Associates, P.C.

/s/Spencer Sheehan

Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Fax: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

1:20-cv-00712
United States District Court
Eastern District of New York

Tiffany Taylor, individually and on behalf of all others similarly situated,

                              Plaintiff,


      - against -


Tipp Distributors, Inc.,


                              Defendant


## Complaint


```
         Sheehan & Associates, P.C.
         505 Northern Blvd Ste 311
         Great Neck NY 11021-5101
            Tel: (516) 303-0552
            Fax: (516) 234-7800
```


Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 9, 2020

                                        /s/ Spencer Sheehan
                                          Spencer Sheehan